**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-cv-00116-LLK**

**ASHLEY M. ALEXANDER** **PLAINTIFF**

**v.**

**ANDREW SAUL, Acting Commissioner of Social Security** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and the Commissioner are at Docket Number ("DN") 17 and DN 24. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 12].

Judicial review, pursuant to 42 U.S.C. § 405(g), consists of a determination of whether the Administrative Law Judge's ("ALJ's") decision was [1] "supported by substantial evidence and [2] was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Because Plaintiff persuasively argues that "the ALJ fails to properly consider the medical opinion of [her treating physician] Phillip Bale, M.D.," regarding the effect of her migraine headaches on her abilities to attend work and stay on task, [DN 17 at 4], the ALJ's decision was not made pursuant to proper legal standards. Therefore, the Court will REMAND this matter to the Commissioner for a new decision.

**Plaintiff's migraine headaches**

In February 2016, Plaintiff presented to Dr. Bale "to discuss disability / medicaid – due to migraines," [Administrative Record, DN 11 at 394], for which Dr. Bale was treating Plaintiff. Dr. Bale noted that Plaintiff was taking Lorazepam for anxiety and that her migraine headaches were "mildly exacerbated" but "doing better since starting Lorazepam on a regular basis." *Id.*

In March 2016, Plaintiff filed her disability claim. *Id.* at 75.

In June 2016, the Commissioner's single decisionmaker ("SDM") denied Plaintiff's disability claim at the initial level, finding that her migraines are not severe, or vocationally significant, in part, because Dr. Bale found Plaintiff's "migraine headaches … [d]oing better since starting Lorazepam on a regular basis." *Id.* at 113 referencing 394.

In October 2016, the Commissioner denied Plaintiff's claim on reconsideration, in a determination in which program physician Robert K. Brown, M.D., concurred with the SDM that Plaintiff's migraines are non-severe in light of Dr. Bale's February 2016 note. *Id.* at 126.

In July 2018, upon referral from Dr. Bale, neurologist David Koury, M.D., recommended that, due to her migraines, Plaintiff "increase Topamax if needed, try Ultram, and get head MRI [magnetic resonance image], MRA [magnetic resonance angiography]." *Id.* at 684. There is no allegation or evidence that Plaintiff's migraines are neurologically based or treatable.

On September 4, 2018, at Plaintiff's request, Dr. Bale completed the Headaches Medical Source Statement. *Id.* at 675-78. Dr. Bale noted that "multiple treatment modalities have been attempted with uniformly abysmal failure" and that "neurologic / pain consultation with Dr. Koury has been unsuccessful toward any significant improvement." *Id*. at 677-78. Dr. Bale opined that, in a work setting, Plaintiff's migraines would likely result in her being absent from work more than four days per month and being off task 25% or more of the day. *Id.*

On September 6, 2018, at the administrative hearing, the vocational expert ("VE") testified that the limit of tolerance of most employers would be being off task 10% or more of the day and being absent two or more days per month. *Id.* at 104.

On September 11 and September 24, 2018, Plaintiff visited the emergency room due to migraine pain. *Id.* at 705-45.

In February 2019, in his written decision, the ALJ acknowledged that Plaintiff suffers from severe, or vocationally significant, migraine headaches. *Id.* at 77. Implicitly, in light of the VE's testimony, the ALJ

found that the migraines would not result in being off task 10% or more of the day or being absent two or more days per months. Like the Commissioner's SDM and program physician before him, the ALJ discounted the possibility of disabling migraines because, in February 2016, Dr. Bale noted that Plaintiff's migraines were doing better with Lorazepam. *Id.* at 82 referencing 394. The ALJ gave little weight to Dr. Bale's September 2018 Headaches Medical Source Statement findings in light of Dr. Bale's prior note regarding improvement with Lorazepam:

> Little weight is afforded to the opinions of Phillip Bale, M.D. (Exhibit 19F). His assessment indicates that the claimant was incapable of even low stress work, she would be precluded from performing basic work activities and need a break from the workplace during the times she has a headache, she would likely be off task 25% or more of the day and she would likely be absent more than 4 days per month as a result of her impairment or treatment (Exhibit 19F). Dr. Bale is an acceptable medical source and he had an established treating relationship with the claimant; however, his opinion is conclusory and it is not supported by his own treatment notes. When seen by this provider on February 22, 2016, her physical examination was normal, except psychiatrically she appeared distraught with depressed affect and anxious demeanor (Exhibit 3F, pg. 3). Her diagnosis of migraine headache was mildly exacerbated, but she reported doing better since starting Lorazepam on a regular basis (Exhibit 3F, pg. 4).

*Id.* at 82.

**The ALJ did not give good reasons for discounting Dr. Bale's opinion that Plaintiff suffers from disabling migraine headaches.**

Plaintiff argues that "the ALJ fails to properly consider the medical opinion of [Dr. Bale] … per 20 C.F.R. § 416.927(c)(2)." [DN 17 at 4]. In this case, Plaintiff benefits by the so-called treating physician rule because she filed her disability claim in March 2016, [DN 11 at 75], and "[f]or claims filed before March 27, 2017, the [old] rules [for weighing medical opinions] in § 416.927 apply." 20 C.F.R. § 416.920c.

Under the treating physician rule, a treating physician's (e.g., Dr. Bale's) medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(c)(2). "When we [i.e., the ALJ] do not give the treating source's medical opinion controlling weight, we apply the factors" of: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.* "We will always give good reasons in our notice of determination or decision [i.e., the ALJ's decision] for the weight we give your treating source's medical opinion." *Id.*

As noted above, the ALJ gave little weight to Dr. Bale's September 2018 opinion that Plaintiff suffers from disabling migraines due to Dr. Bale's February 2016 note that Plaintiff's migraines were doing better with Lorazepam. [DN 11 at 82, 394, 675-78]. This was not a "good reason" for discounting Dr. Bale's opinion because Dr. Bale indicated that the Lorazepam did not ultimately work. *Id.* at 677. On the contrary, according to Dr. Bale, "multiple treatment modalities have been attempted with uniformly abysmal failure," and "neurologic / pain consultation with Dr. Koury has been unsuccessful toward any significant improvement." *Id.* at 677-78.

The Commissioner argues that, in giving Dr. Bale's opinion little weight, the ALJ did not rely only on Dr. Bale's February 2016 note. [DN 24 at 9]. The Commissioner notes that, in another part of his decision, the ALJ mentioned Plaintiff's normal neurological exam result, normal magnetic resonance angiography (MRA) of the head, and conservative treatment. *Id.* The ALJ's reliance on these additional factors did not provide good reasons for rejecting Dr. Bale's opinions.

Admittedly, there may be good reasons in the administrative record for declining to accept Dr. Bale's opinions. However, the requirement of giving "good reasons" exists, in part, to let "claimants understand the disposition of their cases, particularly in situations where a claimant knows" that her physician believes she has a certain restriction and "therefore might be especially bewildered when told by an administrative bureaucracy that" she has no such restriction. *Cole v. Comm'r*, 661 F.3d 931, 937-38 (6th Cir. 2011). Where (as in the present case) the ALJ's decision itself fails to identify "good reasons" for discounting the treating physician's medical opinion, this "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007).

**Dr. Bale's opinion was not so patently deficient the ALJ could not possibly credit it.**

Nevertheless, the Sixth Circuit has recognized some limited circumstances where an ALJ's failure to give good reasons for discounting a treating physician's opinion might constitute harmless error:

> Remand is not necessary ... if the ALJ's failure to provide good reasons is a "harmless de minimis procedural violation." [*Blakley v. Comm'r*, 581 F.3d 399, 409 (6th Cir. 2009)]. Although we have yet to define "harmless error" in this context, we have identified three situations in which it might occur: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," and (3) "where the Commissioner has met the goal of ... the procedural safeguard of reasons." [*Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004).] That said, "[a] procedural error is not made harmless simply because [the claimant] appears to have ... little chance of success on the merits[,]" *Wilson*, 378 F.3d at 546; and where the error makes meaningful review impossible, the violation of the good-reasons rule can never qualify as harmless error, *Blakley*, 581 F.3d at 409.

*Shields v. Comm'r*, 732 F. App'x 430, 438 (6th Cir. 2018).

In this case, the error was not harmless because Dr. Bale's opinion was not so patently deficient the ALJ could not possibly credit it, the ALJ did not adopt Dr. Bale's opinion, and the goal of the procedural safeguard of giving good reasons was not met. Here, the error "makes meaningful review impossible." *Shields*, 732 F. App'x at 438.

The Commissioner argues, in the alternative, that, "[i]f the court determines that the ALJ failed to provide good reasons for discounting Dr. Bale's opinion, it should still affirm the ALJ's decision because the doctor's opinion was … 'so patently deficient that the Commissioner could not possibly credit it.'" [DN 24 at 10 quoting *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)]. The Commissioner advances three theories why Dr. Bale's opinion was patently deficient -- none of which is persuasive.

First, according to the Commissioner, Dr. Bale's findings were patently deficient because they were "contradicted by statements from [Plaintiff herself]." *Id.* at 11 (quoting *West v. Comm'r*, 240 F. App'x 692, 697 (6th Cir. 2007)). In particular, the Commissioner takes exception to Dr. Bale's answer to Question 11, "What makes your patient's headaches better? (Lie down; Take medication; Quiet place; Dark room; Hot pack; Cold pack; Other)." [DN 11 at 676]. Dr. Bale responded "nothing." *Id.* The Commissioner insists

that, when she went to the emergency room with a migraine, Plaintiff reported her symptoms were better after administration of intravenous drugs, and, on another occasion, she reported that Excedrin Migraine and amitriptyline provided some relief. [DN 24 at 11 citing DN 11 at 521, 734]. While Plaintiff may have reported some temporary relief, Dr. Bale was clear that, over time, "multiple treatment modalities have been attempted with uniformly abysmal failure." [DN 11 at 677].

Additionally, the Commissioner takes exception to Dr. Bale's finding that Plaintiff's headaches are "severe --- prevents all activity" and Dr. Bale's checking off every single category when asked to "identify any other signs and symptoms associated with your patient's headaches. (Nausea; Vomiting; Phonophobia; Photophobia; Throbbing pain; Alteration of awareness; Mental confusion; Inability to concentrate; Mood changes; Exhaustion; Malaise; Vertigo; Numbness; Visual disturbances; Impaired sleep, Impaired appetite; Weight change; Pain worse with activity; Causes avoidance of activity)." *Id.* at 675. The Commissioner insists that, when Plaintiff presented to Dr. Bale with migraines in March 2018 and May 2018, Dr. Bale noted Plaintiff's vision, mental status, judgment and affect were grossly intact and she was able to demonstrate good judgment and reason, [DN 24 at 11 referencing DN 11 at 550, 562], which the Commissioner interprets as inconsistent with Dr. Bale's having checked off the categories of visual disturbances, mental confusion, and inability to concentrate, [DN 24 referencing DN 11 at 675]. There is no inconsistency between Plaintiff's migraines being associated with visual disturbances, mental confusion, and inability to concentrate and those signs and symptoms not being present on two occasions.

Second, according to the Commissioner, Dr. Bale's findings were "based on [Plaintiff's] subjective complaints, rather than objective medical data." [DN 24 at 12 quoting *Poe v. Comm'r*, 342 F. App'x 149, 156 (6th Cir. 2009)]. The fact that Dr. Bale's opinion was based on Plaintiff's "subjective complaints of pain does not automatically remove that opinion from the requirements of the treating physician rule or the good reasons rubric." *Flores v. Comm'r*, No. 1:12 CV 105, 2013 WL 504155, at *7 (N.D. Ohio Feb. 8,

2013). "[S]uch an opinion is not transformed into being 'patently deficient' simply by virtue of it resting on the claimant's own reports of pain." *Id.*

Third, according to the Commissioner, Dr. Bale's findings were not genuine medical opinions but rather conclusory opinions that were "dispositive of [Plaintiff's] case; i.e., that would direct the determination or decision of disability." [DN 24 at 13 quoting 20 C.F.R. § 416.927(d)]. Such opinions are "reserved to the Commissioner," and, even when given by a treating physician, are entitled to no "special significance." 20 C.F.R. § 416.927(d).

The Commissioner's argument is unpersuasive in light of *Sharp v. Comm'r*, 152 F. App'x 503 (6th Cir. 2005). Sharp suffered from vertigo, which his treating physician opined would result in job absences of ten days per month, and the ALJ rejected that opinion because "the issue of disability based upon frequent absenteeism ... remains an issue reserved to the Commissioner." *Id.* at 508. The Sixth Circuit acknowledged that the doctor's opinions regarding absenteeism "come close to stating an ultimate opinion about the existence of a disability" but nevertheless remanded for a new decision because "in this instance these opinions came at the end of extensive treatment for the disease." *Id.* at 509. Similarly, in this case, Dr. Bale's opinions regarding Plaintiff's absenteeism and off task time come close to stating an ultimate opinion, but they came at the end of extensive treatment for Plaintiff's migraines.

**Order**

Because the ALJ's decision was not made pursuant to proper legal standards, this matter is hereby REMANDED to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

June 11, 2021

**Lanny King, Magistrate Judge**
**United States District Court**